UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
UNITED STATES OF AMERICA        :
                               :
                               :
    -vs-                        :    Case No. 1:19-cr-65
                               :
                               :
HAZEL MARIE SANCHEZ CERDAS,     :
          Defendant.            :
                               :
-------------------------------:
```

SENTENCING HEARING

August 9, 2019

Before:   Liam O'Grady, USDC Judge

APPEARANCES:

Maureen C. Cain, Counsel for the United States

Rahul Sharma, Kenneth P. Troccoli, and Greg Van Houten, Counsel for the Defendant

The Defendant, Hazel Marie Sanchez Cerdas, in person

1           THE CLERK:  Criminal case number case 1:19-cr-65, the
2    United States versus Hazel Marie Sanchez Cerdas.
3           MS. CAIN:  Good morning, Your Honor.  Maureen Cain on
4    behalf of the United States.
5           THE CLERK:  Counsel, will you please note your
6    appearances for the record.
7           MR. SHARMA:  Good morning, Your Honor.  Rahul Sharma,
8    Greg Van Houten, and Kenneth Troccoli on behalf of Ms. Sanchez.
9           THE COURT:  All right.  Good morning to each of you.
10          All right, Ms. Sanchez Cerdas is now present.  Are
11   the parties ready to proceed?
12          MR. SHARMA:  We are, Your Honor.
13          MS. CAIN:  Yes, Your Honor.
14          THE COURT:  And no need for an interpreter for Ms.
15   Cerdas?
16          MR. SHARMA:  Correct, Your Honor.
17          THE COURT:  Okay.  All right.  There is an objection
18   to the calculation of the Guidelines concerning whether
19   coercion has been demonstrated under 2G1.1(b)(1) and 1(a)(2),
20   which results in a four-point enhancement under the Guidelines.
21          I am uncertain as to whether defendant is still
22   objecting to a role enhancement, but why don't I hear from you
23   first.
24          MR. SHARMA:  Your Honor, if it will please the Court,
25   my co-counsel, Greg Van Houten, will be handling the Guidelines

1 argument, and I will be the handling the argument as to the
2 remaining 3553(a) factors.
3     THE COURT: That's fine with me.
4     MR. SHARMA: And we do not continue to object to the
5 role enhancement.
6     THE COURT: The role enhancement. Okay, thank you.
7     Mr. Van Houten, I have read your pleading, I have
8 gone over all of the texts that you included in your sentencing
9 memorandum, and I will hear anything else you would like to say
10 now.
11     MR. VAN HOUTEN: Thank you, Your Honor. And good
12 morning.
13     THE COURT: Good morning.
14     MR. VAN HOUTEN: Your Honor, we object to the
15 four-level coercion enhancement and contend the Guidelines
16 recommendation should be 30 to 37 months.
17     There was a prostitution operation several years ago.
18 Ms. Sanchez accepts full responsibility for that. And she and
19 her family are paying dearly for it. But there was no
20 coercion.
21     The contemporaneous documents, the texts, the
22 e-mails, the messages for when this operation was actually
23 going on, they all show the opposite. The complainants chose
24 to join, chose to stay, and chose when to leave. It was all
25 voluntary.

1           And so, there is simply insufficient evidence to
2 apply a four-level coercion enhancement that goes along with a
3 recommended year-and-a-half longer in prison.
4           Your Honor, to keep this concise, I'm going to
5 briefly discuss the key documentary evidence demonstrating that
6 each of the complainants, MRF, CVA, WDC --
7           THE COURT:  If you're going to repeat what's in your
8 pleading, I've gone over those exhibits.  So why don't I let
9 Ms. Cain discuss those, and I will give you an opportunity to
10 rebut.  Okay?
11           MR. VAN HOUTEN:  Of course, Your Honor.
12           THE COURT:  All right.  Thank you, sir.
13           Ms. Cain.
14           MS. CAIN:  Your Honor, having gone through the
15 defendant's brief and exhibits, the defense is suggesting that
16 coercion needed to be present for the entire eight-year period
17 that this defendant pled guilty to, and that is simply not
18 accurate under the Guidelines.
19           THE COURT:  What evidence do you have that
20 contradicts the texts, the communications, the letter from the
21 husband, all of that, other than the statements of the
22 co-conspirators?
23           MS. CAIN:  So, Your Honor, we submitted the FBI 302s
24 as our sentencing exhibits.  And the 302s are four victims in
25 this case, MRF, CVA, ZF, and WDC.  And when you look at the

1   statements of those four victims, two of which are present in
2   court today, CVA, and MRF's attorney is present in court today,
3   you see consistency with -- their statements about the conduct
4   that Hazel Sanchez engaged in that ultimately, whether you look
5   at individually or collectively, the acts that she engaged in
6   created a coercive environment.
7   　　　　　　THE COURT:  I understand, I read the statements.  We
8   now have contradictory evidence through actual person-to-person
9   communications and a person from the outside.  And I understand
10  that there was voluminous discovery in the case, including cell
11  phone records, et cetera.
12  　　　　　　What evidence do you have coming from Ms. Sanchez
13  Cerdas that contradicts what has been recovered from that
14  discovery by defendant's counsel?
15  　　　　　　MS. CAIN:  So in addition to the statements, Your
16  Honor, we cite to contemporaneous e-mail that was sent in
17  August of 2012 by MRF, August 16, 2012, where MRF says, and
18  this is the English translation:  Leave me in peace, Haz, I am
19  going to please ask you to not get involved with me.  You have
20  damaged me a lot already.  I have lost my baby because of you.
21  So, please, I tell you, don't bother me.
22  　　　　　　And we think that that e-mail is corroborative of the
23  four other women making similar statements about this coercive
24  scheme that she engaged in.
25  　　　　　　And I as said at the beginning, Your Honor, the

6

1  defense is suggesting that we have to show that coercion
2  existed for the entire eight years, and that's just not what
3  the Guidelines require.  We have to show that at some point
4  there was any form of conduct that negated the voluntariness of
5  the victims.
6           And when you look at four women saying the same thing
7  with, this defendant held onto their passports while they were
8  here in the United States; or this defendant was making drugs
9  available, such as marijuana and cocaine.  And we have evidence
10 that this was making them more complicit with the male
11 customers.  Or we have statements from the witnesses where they
12 say at times Hazel Sanchez acted like we were her only friend.
13 Right?  We submit she used this as a form of manipulation.
14          But then all four women also state she then would,
15 when needed, threaten the women, and threaten to harm their
16 children in Costa Rica, and threaten to expose their
17 prostitution activities to their families.  These women were
18 led to believe that Hazel Sanchez was going to do that, and
19 that negates the voluntariness of their actions.
20          Additionally, Your Honor, some of the victims admit,
21 especially ZF, she says, look, when I first started working
22 under Hazel Sanchez, I knew it was about prostitution, and it
23 was my understanding that we would split the money 50/50.
24          But then when you look at her 302s, she admits to
25 that, and then she talks about later on Hazel Sanchez began to

1 engage in very manipulate, coercive conduct. She wouldn't let
2 ZF leave. And she wasn't paying ZF any money because she knew
3 that ZF had nowhere to go.
4 And you also see that all four women talk about
5 literally planning their escape from Hazel Sanchez. If this is
6 voluntarily, if this is just simply this, you know,
7 contract/employment business, why are these women having to
8 plan their escape? With CVA talking about how she wanted to
9 obtain a phone from one of the customers to call 9/11.
10 Or ZF not telling Hazel that she was never coming
11 back so that Hazel wouldn't make a scene out of it. And the
12 threats that Hazel made to ZF about reporting her to
13 Immigration.
14 So when you look at the combination of the
15 statements, we believe that that shows the coercive aspect of
16 this scheme.
17 And, moreover, when you look at Hazel Sanchez's own
18 psychological report that was submitted, she talks about the
19 horrific, non-consensual conduct that she herself endured at
20 times while working in the world of prostitution with what
21 these male customers were doing.
22 So that's in fact corroborating what these women are
23 saying about how traumatic and awful it was to be working under
24 these conditions. And the tactics and techniques that Hazel
25 used to keep them working added to their emotional distress and

8

1  to their trauma.
2  　　　　　THE COURT:  All right, thank you.
3  　　　　　All right, I'm not going to give the four-point
4  enhancement for coercion.  I think I understand the victims'
5  statements, but the evidence, primary evidence of the
6  communications between each of these co-conspirators and Ms.
7  Sanchez Cerdas demonstrate voluntariness.  And there may have
8  been coercion at some stage, and perhaps I'll -- but with the
9  evidence that I have, certainly the mere withholding of
10 passports isn't the type of coercion that is necessary under
11 the statute.
12 　　　　　So I am not going to give the four-point enhancement.
13 　　　　　It results in a reduction of the Guideline range to a
14 19, and a Guideline of 30 to 37 months, and up to three years
15 of supervised release.
16 　　　　　All right.  Ms. Cain, do you want to be heard on
17 sentencing?
18 　　　　　MS. CAIN:  Briefly.
19 　　　　　THE COURT:  I'm sorry, let me -- Ms. Sanchez Cerdas,
20 have you gone over the presentence report?
21 　　　　　THE DEFENDANT:  Yes.  Yes, Your Honor.
22 　　　　　THE COURT:  Any corrections or additions that you
23 want made to the report?
24 　　　　　THE DEFENDANT:  No, Your Honor.
25 　　　　　THE COURT:  All right, have a seat.

1           I will order that the report be filed with the
2    amendment to the Guideline range, and otherwise filed without
3    further amendment.
4           All right, Ms. Cain.
5           MS. CAIN:  Yes, Your Honor, thank you.
6           Your Honor, sexually exploiting women for profit is
7    an incredibly grave offense that inflicts extreme mental,
8    emotional, and physical harm on the victims.
9           As I stated earlier in court today, one of the
10   victims, CVA, is here present today.  She submitted a victim
11   impact statement that I sent to Probation earlier this week.
12   Probation informed me they sent it to you, but I have an
13   additional copy --
14          THE COURT:  I have received it.
15          MS. CAIN:  Okay.  Thank you, Your Honor.  And I am
16   sure Your Honor is organized and you read the statements ahead
17   of time, so I don't need to read statements today, if that's
18   fair.
19          THE COURT:  You may choose to read what you want, but
20   I have read everything.
21          MS. CAIN:  Okay, you've read everything.  Thank you,
22   Your Honor.
23          As the evidence in this case shows, that women saw up
24   to 17 customers a day.  They worked 12-hour days while working
25   under Hazel Sanchez.  Hazel Sanchez directed the victims to do

1  whatever the customers wanted.
2           All three of those facts, Your Honor, are undisputed.
3  All three of those facts are pled to in the statement of facts.
4           As Your Honor also saw, there were numerous degrading
5  and humiliating acts that were done to these females, like
6  being penetrated by bottles, being spit at, they're being
7  penetrated without condoms.  And all this is being done so that
8  Hazel Sanchez is able to profit.
9           With respect to the victim impact statements that
10 have been submitted and statements that have been made within
11 the presentence report by other victims, this emotional impact
12 on these women is just simply immeasurable.  The women talk
13 about post-traumatic stress disorder.  They talk about the
14 severe pain and grief that they have gone through.  There are
15 two victims who have even discussed attempting suicide as a
16 result of all of this.
17          And based on that, Your Honor, the United States is
18 seeking a Guidelines sentence of, now that the Guidelines are
19 30 to 37 months, we're seeking a sentence of 30 to 37 months,
20 three years of supervised release.
21          And there is also a restitution request that is
22 pending, Your Honor.  And through the defense counsel's
23 request, they would like to resolve that at a future date if
24 it's okay with Your Honor.
25          THE COURT:  All right, certainly, that's fine.  The

11

1  statute allows if there is a waiver, for any restitution to go
2  beyond the 90 days.
3         And if that's agreeable, I'll await your resolution
4  of restitution.  And if not, we'll set a hearing date.
5         MS. CAIN:  Thank you, Your Honor.
6         THE COURT:  All right.  Counsel.
7         MR. SHARMA:  Your Honor, I will try to keep this as
8  brief as I can, but --
9         THE COURT:  Well, I have read your pleading, but you
10 take whatever time you think is necessary.
11        MR. SHARMA:  Thank you, Your Honor.
12        So, you know, I am fully aware that the Court has
13 carefully reviewed the pleadings.  I just wish to speak about
14 the fact that I believe that this is an extraordinary case.
15        I think, you know, sentencing is an inherently
16 imperfect exercise.  The Court receives a lot of documents to
17 review and tries its best to get a feel for what the crime
18 involved, who the defendant is, how they feel about their
19 offense and about their future.  And it's an imprecise
20 exercise.
21        And the Court can't see, except through maybe a
22 letter, or a short speech from the defendant, or by defendant's
23 counsel perhaps, how deeply ashamed they are of their offense.
24 How low they have been brought by the -- by their arrest and by
25 the charge, by the case, and how terrified they are.

1          So I would just ask the Court to absolutely put
2    itself in the shoes of the victims.  That is necessary.  We do
3    not deny that this commercial sex industry is ugly, and that it
4    is not okay to promote it.
5          But we also ask the Court to please try to put itself
6    in the shoes of Ms. Sanchez.  In March, she arrives from Costa
7    Rica where she has been caring for her mother in Miami and she
8    is arrested.  And she has never been incarcerated before.
9          And she is asked to answer for conduct, that main
10   offense conduct that ended about seven years ago.  Yes, she has
11   continued to engage in commercial sex in the years since 2012,
12   but, as the Court knows from the declaration of YP and from the
13   complete absence of any communications after 2012, she wasn't
14   running any operation after that.  She was just prostituting
15   herself.
16         And she is incarcerated for the first time, but she
17   is also detoxing for the first time.  She had been using
18   marijuana -- to call it habitual would be kind of an
19   understatement.  She was using it incessantly to numb herself
20   and get through life, to get through a world where she had
21   experienced serious traumas that we have discussed in our
22   memoranda and that are discussed in the psychological
23   evaluation.
24         And, you know, one thing the Court doesn't know is
25   just how much her family has contacted me and said that they

1  want to be here.  They want to do all of that.  But Ms. Sanchez
2  has made it very clear that she feels ashamed enough for the
3  amount of stress she has caused her family, and she is very
4  ashamed of how disappointed she feels they must be in her for
5  her conduct.  They have no prior -- none of them have any prior
6  experience with the law.
7       And she said yesterday to me, you know, I'm just the
8  black sheep, and I really -- I've really brought shame on my
9  family.  And that's why they are not here today.
10      Ms. Sanchez has really done a lot of reflection over
11 the last five months in jail incarcerated.  And she has
12 realized how much she truly did numb herself to what had
13 happened to her, but also to what she was doing and why that
14 was wrong.
15      And she is hopeful that she can still make amends.
16 She is hopeful -- she told me yesterday, she said, you know,
17 I'm 45, I think I can still do something with my life.
18      And she has received counseling.  She has detoxed.
19 And she has done everything she can.  And if the Court -- you
20 know, obviously, there are certain things that I can't discuss
21 here at the podium, such as certain traumas and certain things
22 she has done to make amends.  If the Court would like any
23 elaboration, I am happy to approach the bench.  But if not,
24 that's fine.
25      THE COURT:  I don't need any further elaboration.  I

14

understand your argument.

MR. SHARMA: And, Your Honor, I would just -- in addition to the things that we mention in our pleadings, I would just like to tell the Court that, you know, we have been working on this case right up until last night. And last night I was looking for comparable cases, and I found a case that actually Ms. Cain was the prosecutor on, Bonilla-Hernandez, before Judge Ellis where it was -- and I have the statement of facts if the Court would like them.

But the defendant in that case, he was a man who had absolutely, as far as I can tell from the pleadings, there was absolutely no trauma, no victimization that he was perpetrating himself, and he had -- there were more prostitutes involved in his operation, and it lasted for three years and ended only last year, ended in July of 2018. He received 27 months, Your Honor.

In my opinion, given the pressures that Ms. Sanchez felt in starting this operation many years ago, given the traumas she experienced that informed how she viewed her own body and how she viewed the female body in general, and given the amount of time that has passed since that operation ended, given that this is her very first offense, and the deep, deep remorse she has, I mean it when I say that I believe a sentence of no more than one year and one day is appropriate in this case. I mean no more, in my opinion. I don't believe that one

1    year and one day is necessarily an appropriate sentence.

2             I personally believe from my interactions with Hazel
3    that she fully recognizes the wrongness of her conduct and has
4    been deeply affected by this experience, and I feel very
5    confident she will never break the law ever again.

6             And so, I just respectfully believe that anything
7    even close to what the man in Bonilla-Hernandez got, who was
8    not a victim in any way, who wasn't desperate for money, who
9    hadn't experienced traumas that he was re-perpetrating, and
10   whose operation only ended last year, I believe that she is
11   deserving of a significantly lower sentence.

12            THE COURT:  All right, thank you, Mr. Sharma.

13            All right, Ms. Sanchez, please come to the podium.
14   This is your opportunity to tell me anything you would like to
15   before I sentence you.  And please remain there when you're
16   done.

17            THE DEFENDANT:  Your Honor, I wanted to tell you that
18   I am very sorry for my actions.  I take full responsibility for
19   what I did.  Nobody forced me in any way.  I'm sorry, and I
20   have been sorry for many, many years about that.

21            In 2012 when all this well happened, I decided on my
22   own, I realize that it was wrong what I was doing, and I
23   separated from everything.  And I tried to not do any of it to
24   myself again.  And sometimes because of different reasons, I
25   continued doing it.

1          This experience has just been very tough on me.  I
2   feel very ashamed for everything.  You know, when you're doing
3   things like this, you don't want to be confronted sometimes.
4          And I want to tell you that I tried to get away from
5   it many, many times.  And I guess when you are inside, you just
6   don't see it from the outside.
7          And being in prison, being in jail now, it gave me
8   the time to see it from another perspective and see what I was
9   doing.  And sometimes bad things happen for the good, and I
10  think this is the case in my case because I didn't realize what
11  I was doing to myself and to other people, and how much my
12  family cares about me, how much they love me.
13         And like I told my daughter, I still think that even
14  though I am 45, I have time to do something with my life.  And
15  after being in jail I have found a lot of resources, and I am
16  very hopeful with my future.  And I know with a little help, I
17  can make it.  And I have a lot of people that are waiting for
18  me, and I really want to show them that I am really sorry for
19  what I did.
20         I wish Your Honor that you can have mercy on me and
21  make me -- help me to be able to restart my life.  I think at
22  this age it's like I feel worried because I said, I think, you
23  know, it's right on the -- on the moment that I can really, I
24  can really do it.
25         And I know I did wrong and I'm very sorry.  When

1  during all this process, the first time I saw my lawyer, I
2  wanted the truth, you know, even accepting my responsibilities
3  and the facts and everything. The truth for me has been very
4  important. And all I can tell you is my truth, you know, I am
5  very, very sorry. And I wish you that you give me an
6  opportunity, Your Honor --
7          THE COURT: All right, thank you.
8          THE DEFENDANT: -- to turn things around. Thank you.
9          THE COURT: All right. Thank you, Ms. Sanchez.
10         Well, I didn't find coercion under the Guidelines,
11 but there is no question that you ran this operation through
12 going down to Costa Rica, and, yes, you had family issues to
13 bring you down there, but also recruiting of prostitutes.
14         And I believe much of what they said in their victim
15 statements that corroborated the fact that this was a really
16 rough operation and that they suffered great harm and
17 humiliation. And that you were very much in charge of the
18 prostitution ring and exercised great control over them and
19 caused, as I said, great harm to them and to the community.
20         So that's why the Guidelines are where they are. And
21 you have been involved in this industry for a very long time,
22 but we are talking here about a specific period of time. And a
23 sentence of 12 months and a day is not appropriate given the
24 nature of this crime, the harm that was caused.
25         I have looked at your own personal being. I believe

1  that your family will continue to love you and support you.
2  That you have the opportunity to do good things when you are
3  released, but that under the 3553 factors the crime requires a
4  greater punishment.
5            I am going to sentence you to 30 months of
6  incarceration.  Three years of supervised release.  A $100
7  special assessment.
8            I will defer restitution until either we have another
9  hearing or counsel can work that out.
10           I will not impose a fine or costs because I find you
11 are unable to afford them.
12           As special conditions of supervised release, I will
13 order -- I will defer on restitution.  I will order that you
14 register with the Sex Offender Registration and Notification
15 Act and any other state sex offender agencies that are
16 required.  That you participate in both mental health and
17 substance abuse testing and treatment.
18           That you have no contact with any of the victims.  By
19 that I mean co-conspirator victims in this case.
20           That you provide the Probation Office with any
21 requested financial information.  And that you find and
22 maintain employment when you are released.
23           I will give you credit for time served awaiting
24 sentencing.
25           Mr. Sharma, do you want a designation close to New

1  York City?

2          MR. SHARMA:  No, Your Honor, if we could have a

3  recommendation for Alderson, Your Honor.

4          THE COURT:  All right.  I will ask the Bureau of

5  Prisons to designate Ms. Sanchez Cerdas to Alderson.

6          All right.  Anything else?

7          THE DEFENDANT:  Thank you, Your Honor.

8          MR. SHARMA:  Nothing for the defense, Your Honor.

9          THE COURT:  All right.  Thank you, counsel.

10         THE DEFENDANT:  Thank you.

11         -------------------------------------------------

19              I certify that the foregoing is a true and

20     accurate transcription of my stenographic notes.

23                    /s/   Norman B. Linnell
                  Norman B. Linnell, RPR, CM, VCE, FCRR
24